HARVEY SISKIND LLP
IAN K. BOYD (SBN 191434)
iboyd@harveysiskind.com
DONALD A. THOMPSON (SBN 260076)
dthompson@harveysiskind.com
JANE A. LEVICH (SBN 293299)
jlevich@harveysiskind.com
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Tel: (415) 354-0100
Fax: (415) 391-7124

Attorneys for Plaintiff
TREASURE ISLAND MEDIA, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREASURE ISLAND MEDIA, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY R. SMITH, an individual,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, CYBERPIRACY, BREACH OF CONTRACT, BREACH OF IMPLIED CONTRACT, TRADE SECRET MISAPPROPRIATION, CONVERSION, UNJUST ENRICHMENT, UNFAIR COMPETITION, COMPUTER FRAUD AND ABUSE ACT**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      This action involves unlawful conduct by Defendant Jeffrey R. Smith ("Defendant" or "Smith") against his previous employer, Plaintiff Treasure Island Media, Inc. ("Plaintiff" or "TIM").  On February 22, 2014, Defendant suddenly resigned as Director of Marketing & Customer Engagement of TIM.  The circumstances of Defendant's resignation, and his conduct during the preceding months, violate numerous federal and state laws.  Prior to initiating this action, TIM warned Defendant that his conduct was unlawful and earnestly attempted to resolve this dispute amicably.  Unfortunately Defendant continues his unlawful activities which continue to cause reputational and financial harm to TIM.  TIM is left with no choice but to petition this Court for appropriate redress.

**THE PARTIES**

2.      Plaintiff Treasure Island Media, Inc. is a California corporation with its principal place of business in San Francisco, California.

3.      On information and belief, Defendant Jeffrey R. Smith is an individual residing in New York, New York.  Defendant moved to New York, New York from San Francisco, California in July 2013 with the intent to return to San Francisco after one year.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq*.  This Court has supplemental jurisdiction over TIM's state law claims pursuant to 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over Defendant because Defendant's contacts with California are substantial, continuous, and systematic.  Plaintiff hired Defendant in San Francisco for employment at its San Francisco office in January 2012.  Defendant resided and worked in San Francisco, California on behalf of Plaintiff until July 2013, and intended to return to California in July 2014.  This action arises out of and relates to Defendant's activities, many of which took place while he was employed with TIM in San Francisco, California.  Defendant signed a confidentiality agreement – which plays a significant role in this action – with TIM while in San

1  Francisco, California. Additionally, Defendant's misconduct and illegal actions intentionally caused

2  injury to TIM in San Francisco, California.

3      6.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. §

4  1391(b)(2) because a substantial part of the events giving rise to TIM's claims occurred here.

5                          **INTRADISTRICT ASSIGNMENT**

6      7.  This is an intellectual property action and therefore shall be assigned on a district-wide

7  basis per Civil L.R. 3-2(c).

8                  **THE CONTROVERSY BETWEEN THE PARTIES**

9      8.      TIM is an adult entertainment company, headquartered in San Francisco, California.

10  TIM operates multiple websites, including a blog. TIM also utilizes social media services such as

11  Facebook, Twitter, and Tumblr.

12      9.      TIM uses the MITCH MASON trademark in association with its adult entertainment

13  services. The MITCH MASON trademark does not identify a living individual. The MITCH

14  MASON trademark identifies a character who provides certain services of TIM. To the extent that

15  the MITCH MASON trademark identifies a person – specifically, a go-go dancer turned business

16  school student turned club promoter turned adult blogger – that is a character-based, fictional

17  depiction which is an object of fantasy and not based on reality or fact.

18      10.      The name MITCH MASON was chosen in part to suggest that the character was a

19  relative of another TIM trademark, MATT MASON, which is also untrue. This additional fictional

20  depiction served the purpose of further associating the MITCH MASON character, and the related

21  services, with TIM's actual and prospective customers.

22      11.      TIM owns the MITCH MASON trademark throughout the United States, the State of

23  California, and this judicial district for providing online journals, namely, blogs in the field of adult

24  entertainment. TIM's MITCH MASON trademark has been used in commerce continuously since at

25  least as early as January 2012 solely and exclusively to promote TIM and its related services. TIM's

26  MITCH MASON trademark is inherently distinctive and has acquired distinctiveness through

27  extensive use and promotion in commerce.

28

12. TIM applied to register the MITCH MASON trademark with the U.S. Patent & Trademark Office ("USPTO") (Serial No. 85826306). The application was published, the period for opposing the application passed, and TIM expects a federal trademark registration to issue within a matter of weeks. TIM will amend its Complaint accordingly when the federal registration issues.

13. TIM employed Defendant as Director of Marketing & Customer Engagement from January 2012 to February 22, 2014. TIM and Defendant had an at-will employment agreement implied by their course of conduct between January 2012 and February 22, 2014 (the "Employment Agreement"). TIM has complied in full with the terms of the Employment Agreement. Defendant breached the Employment Agreement by misusing TIM's confidential information to establish and promote a competing business, all while using the identical MITCH MASON mark, infringing TIM's rights in its MITCH MASON mark.

14. TIM and Defendant also had a written confidentiality agreement, attached as Exhibit A (the "Confidentiality Agreement"), which prohibited Defendant from using, disclosing, or otherwise making use of TIM's confidential information for his personal benefit. The Confidentiality Agreement binds Defendant for a period of ten years from the date of signature, regardless of Defendant's relationship with TIM.

15. In his role as Director of Marketing & Customer Engagement, Defendant had access to TIM's confidential documents – including financial records, contractor health records, price sheets, business plans, marketing plans, contact lists, and customer lists – through his company-issued computer and cloud storage accounts.

16. In his role as Director of Marketing & Customer Engagement, Defendant also managed TIM's social media accounts, including some branded with the MITCH MASON mark and others branded with the TREASURE ISLAND MEDIA mark; he wrote blog posts under the MITCH MASON mark and the TREASURE ISLAND MEDIA mark; and he oversaw the MITCH MASON and TREASURE ISLAND MEDIA marks generally.

17. On February 22, 2014, Defendant suddenly resigned as Director of Marketing & Customer Engagement.

18.     In his abrupt departure from TIM, Defendant absconded with documents, usernames, and passwords – many of which provided access to confidential information – which are the property of TIM.  On his last day with TIM, Defendant refused to return his corporate laptop, backed the contents of the corporate laptop up to a personal cloud storage account, and removed at least three binders of confidential information.

19.     Defendant also destroyed commercially important information belonging to TIM at the time of his exit.  For example, Defendant deleted all of his assigned tasks in the TIM tasks management system.  TIM is still in the process of determining what other commercially important and financially sensitive information may have been destroyed.

20.     In the months leading up to Defendant's departure from TIM, Defendant diverted TIM funds for his personal financial benefit.  For example, Defendant used company funds to purchase advertisements that diverted online traffic to his affiliate account - allowing Defendant to profit - instead of directing traffic to the company website.  Defendant also used company funds to launch marketing campaigns that directed traffic to his affiliate account and increased Defendant's unreported commissions, instead of directing traffic directly to TIM.  Defendant maintained this misleading and unlawful scheme by removing other TIM personnel as administrative users of marketing and advertising accounts.  TIM is still determining the amount of funds diverted through Defendant's schemes.

21.     On information and belief, Defendant also installed spyware on TIM computers prior to his departure, specifically including the computer of TIM employee Julian Marks.  Defendant utilized the spyware to obtain confidential information from TIM.

22.     Defendant registered the domain name <mitchmason.com>, only a few weeks before abruptly leaving TIM.  Defendant subsequently launched a website at that domain, and actively promotes that domain and the MITCH MASON trademark for his personal benefit, knowing that TIM owns all rights in the MITCH MASON trademark.

23. To this day, Defendant retains possession, custody, and control of TIM's property without its consent, including a corporate laptop, usernames and passwords for social media and cloud storage accounts, as well as physical and backup files full of confidential information.

**First Cause of Action**

(False Designation of Origin—15 U.S.C. § 1125(a))

24. TIM incorporates all above paragraphs here.

25. The MITCH MASON trademark is a valid, protectable trademark.

26. TIM owns common law rights in the MITCH MASON trademark throughout the United States, the State of California, and this judicial district for use with adult entertainment services, including online journals. TIM's rights in the MITCH MASON trademark precede any use of the mark by Defendant personally for his own benefit.

27. Defendant is personally using the MITCH MASON mark with adult entertainment services, including online journals, likely causing consumers to be confused, mistaken or deceived, as to the source of Defendant's services.

28. Defendant had actual or constructive knowledge of TIM's MITCH MASON trademark before beginning to use the mark for his own personal benefit.

29. TIM has not consented to Defendant's use of the MITCH MASON trademark personally. To the contrary, it has expressly and repeatedly objected.

30. Defendant's unauthorized use of the MITCH MASON mark personally constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

31. The willful and intentional nature of Defendant's false designation of origin makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

32. As a result of Defendant's false designation of origin, TIM has suffered damages in an amount to be determined at trial.

33. As a result of Defendant's false designation of origin, TIM has also suffered irreparable injury to its business, reputation, and goodwill. TIM will suffer such irreparable injury until this Court enjoins Defendant's misconduct.

**Second Cause of Action**

(Cyberpiracy—15 U.S.C. § 1125(d))

34.     TIM incorporates all above paragraphs here.

35.     Defendant has a bad-faith intent to profit from TIM's MITCH MASON trademark.

36.     Defendant registered the domain <mitchmason.com> on or around January 29, 2014, unbeknownst to TIM, and while still employed by TIM.

37.     TIM's MITCH MASON trademark is inherently distinctive and was distinctive at the time that Defendant registered the domain <mitchmason.com>.

38.     The domain <mitchmason.com> is confusingly similar to TIM's MITCH MASON trademark.

39.     Defendant had actual or constructive knowledge of TIM's MITCH MASON trademark before registering the domain <mitchmason.com>.

40.     TIM has not consented to Defendant's registration or use of the domain <mitchmason.com>.  To the contrary, it has expressly and repeatedly objected.

41.     Defendant's unauthorized use of the domain <mitchmason.com> constitutes cyberpiracy in violation of 15 U.S.C. § 1125(d)(1).

42.     The willful and intentional nature of Defendant's cyberpiracy makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

43.     As a result of Defendant's cyberpiracy, TIM has suffered damages in an amount to be determined at trial.  Pursuant to 15 U.S.C. § 1117(d), TIM may elect, at any time before final judgment is entered by the trial court, to recover, instead of actual damages and profits for Defendant's violation of 15 U.S.C. § 1125(d), an award of statutory damages up to $100,000, as the Court considers just.

44.     As a result of Defendant's cyberpiracy, TIM has also suffered irreparable injury to its business, reputation, and goodwill.  TIM will suffer such irreparable injury until this Court restrains and enjoins Defendant's misconduct.

**Third Cause of Action**

(Common Law Breach of Written Contract)

45.     TIM incorporates all above paragraphs here.

46.     On January 1, 2013, TIM and Defendant entered into the Confidentiality Agreement attached as Exhibit A.

47.     TIM complied in full with the terms of the Confidentiality Agreement.

48.     Defendant breached the Confidentiality Agreement by misusing TIM's confidential information to establish and promote a competing business under the infringing MITCH MASON mark.

49.     As a result of Defendant's breach, TIM has been harmed in an amount to be determined at trial, in any event greater than $75,000.

50.     As a result of Defendant's breach, TIM has also suffered irreparable injury to its business, reputation, and goodwill.  TIM will suffer such irreparable injury until this Court enjoins Defendant's misconduct.

**Fourth Cause of Action**

(Common Law Breach of Implied Contract)

51.     TIM incorporates all above paragraphs here.

52.     TIM and Defendant had an at-will employment agreement implied by their course of conduct between January 2012 and February 22, 2014 (the "Employment Agreement").

53.     TIM and Defendant intentionally entered into the Employment Agreement and each knew, or had reason to know, that the other party would interpret the course of conduct as an agreement to enter into the Employment Agreement.

54.     TIM has complied in full with the terms of the Employment Agreement.

55.     Defendant breached the Employment Agreement by misusing TIM's confidential information to establish and promote a competing business under the infringing MITCH MASON mark.

56.     As a result of Defendant's breach, TIM has been harmed in an amount to be determined at trial, in any event greater than $75,000.

57.     As a result of Defendant's breach, TIM has also suffered irreparable injury to its business, reputation, and goodwill. TIM will suffer such irreparable injury until this Court enjoins Defendant's misconduct.

**Fifth Cause of Action**

(Trade Secret Misappropriation—California Civil Code § 3426 *et seq.*)

58.     TIM incorporates all above paragraphs here.

59.     TIM owns valuable, confidential information which comprise trade secrets and includes customer lists, mailing lists, and business plans.

60.     This confidential information derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure.

61.     TIM takes reasonable steps to maintain the confidentiality of its trade secrets.

62.     Defendant owed a duty to maintain the confidentiality of TIM's trade secrets. Defendant learned TIM's trade secrets as an employee of TIM subject to the Confidentiality Agreement.

63.     Defendant misused TIM's trade secrets without express or implied consent to establish and promote a competing business under the infringing MITCH MASON mark.

64.     Defendant knew or had reason to know that he had acquired TIM's trade secrets under circumstances giving rise to a duty to maintain the confidentiality of those trade secrets and not to use them for his personal benefit.

65.     Defendant's unauthorized use of TIM's trade secrets constitutes trade secret misappropriation in violation of California Civil Code § 3426 *et seq.*

66.     As a result of Defendant's trade secret misappropriation, TIM has suffered damages in an amount to be determined at trial, in any event greater than $75,000.

67.     As a result of Defendant's trade secret misappropriation, TIM has also suffered irreparable injury to its business, reputation, and goodwill. TIM will suffer such irreparable injury until this Court enjoins Defendant's misconduct.

## Sixth Cause of Action

### (Common Law Conversion)

68.     TIM incorporates all above paragraphs here.

69.     TIM owns corporate laptops, social media accounts, online advertising accounts, and online storage accounts.

70.     As an employee of TIM, Defendant enjoyed use of a TIM-owned corporate computer and access to all of TIM's social media accounts, online advertising accounts, and online storage accounts.

71.     Defendant intentionally and substantially interfered with TIM's property by taking possession of corporate funds from TIM's online advertising accounts.

72.     Defendant intentionally and substantially interfered with TIM's property by preventing TIM from accessing TIM's social media accounts and online storage accounts.

73.     Defendant intentionally and substantially interfered with TIM's property by refusing to return the corporate laptop, social media accounts, and online storage accounts after TIM demanded their return.

74.     TIM did not consent to Defendant's intentional and substantial interference with TIM-owned property.

75.     TIM has repeatedly asked Defendant to return possession, custody, and control of its property to TIM, but Defendant has refused.

76.     As a result of Defendant's intentional and substantial interference, TIM has been damaged in an amount to be proved at trial, in any event greater than $75,000.

77.     Defendant's conduct was a substantial factor in causing TIM harm.

78.     As a result of Defendant's conversion, TIM has also suffered irreparable injury to its business, reputation, and goodwill.  TIM will suffer such irreparable injury until this Court enjoins Defendant's misconduct.

### Seventh Cause of Action

#### (Common Law Unjust Enrichment)

79.     TIM incorporates all above paragraphs here.

80.     As an employee of TIM, Defendant enjoyed access to all of TIM's social media accounts, online advertising accounts, and online storage accounts.

81.     As an employee of TIM, Defendant used TIM's online advertising accounts to misappropriate corporate funds for his personal financial benefit.

82.     TIM has repeatedly asked Defendant to return its property, but he has refused.

83.     As a result, Defendant has enjoyed a benefit that he may not justly retain, and he has been unjustly enriched at TIM's expense.

84.     As a result of Defendant's unjust enrichment, TIM has been damaged in an amount to be proved at trial, in any event greater than $75,000.

### Eighth Cause of Action

#### (Common Law Unfair Competition)

85.     TIM incorporates all above paragraphs here.

86.     Defendant's conduct – namely, his unauthorized, bad faith use of the MITCH MASON mark in a manner that is likely to cause confusion, or to cause mistake, or to deceive, and his misuse of TIM's trade secrets to establish and promote a competing business – constitutes unfair competition under the common law.

87.     As a result of Defendant's unfair competition, TIM has suffered damages in an amount to be determined at trial, in any event not less than $75,000.

88.     As a result of Defendant's unfair competition, TIM has also suffered irreparable injury to its business, reputation, and goodwill.  TIM will suffer such irreparable injury until this Court enjoins Defendant's misconduct.

**Ninth Cause of Action**

(Computer Fraud and Abuse Act—18 U.S.C. § 1030)

89.     TIM incorporates all above paragraphs here.

90.     Defendant maintained unlawful possession of a TIM-owned corporate laptop after resigning from employment with TIM on February 22, 2014.

91.     The corporate laptop in Defendant's possession is used to transmit business email, a form of interstate or foreign communication.

92.     Defendant relinquished authority to access the TIM-owned laptop when he resigned from TIM on February 22, 2014.

93.     Defendant exceeded his authorized access when he intentionally accessed and obtained information from the corporate laptop by backing-up the contents of the laptop – including confidential business information – to a personal cloud storage server after he resigned from TIM in violation of 18 U.S.C. §1030(a)(2).

94.     Defendant's conduct caused damage and/or loss to TIM in excess of $5,000 in a period of less than one year.

**PRAYER FOR RELIEF**

Wherefore, TIM prays for relief as follows:

1.     A judgment enjoining Defendant preliminarily and permanently from (1) using the MITCH MASON trademark or any other trademark that is confusingly similar to TIM's MITCH MASON trademark; and (2) doing any act likely to cause or to deceive consumers into believing that there is some connection between Defendant and TIM;

2.     A judgment ordering transfer of the domain name <mitchmason.com> to TIM pursuant to 15 U.S.C. § 1125(d);

3.     A judgment that Defendant account for and disgorge to TIM all of the profits realized by Defendant, or others acting in concert or participating with Defendant, resulting from Defendant's acts of false designation of origin and unfair competition;

4.        A judgment awarding compensatory, general, incidental, and consequential damages according to proof at trial, in any event greater than $455,000;

5.        A judgment for restitution of the amounts by which Defendant benefited according to proof at trial, in any event greater than $75,000;

6.        A judgment for statutory damages in the amount of not less than $1,000 and up to $100,000 pursuant 15 U.S.C. § 1117(d);

7.        A judgment for punitive and exemplary damages according to proof at trial;

8.        A judgment for an award of interest, including prejudgment interest, at the legal rate;

9.        A judgment for costs of suit incurred herein; and

10.       Such other and further relief as the Court may deem just and proper in the circumstances.

Dated: March 4, 2014                        Respectfully submitted,

HARVEY SISKIND LLP
IAN K. BOYD
DONALD A. THOMPSON
JANE A. LEVICH


By: __/s/ Ian K. Boyd_____

Attorneys for Plaintiff
TREASURE ISLAND MEDIA, INC.

## <u>CERTIFICATION OF INTERESTED ENTITIES OR PERSONS</u>

Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated: March 4, 2014                    Respectfully submitted,

HARVEY SISKIND LLP
IAN K. BOYD
DONALD A. THOMPSON
JANE A. LEVICH


By:    /s/ Ian K. Boyd
_____

Attorneys for Plaintiff
TREASURE ISLAND MEDIA, INC.

1

## **JURY DEMAND**

2        Plaintiff Treasure Island Media, Inc. hereby demands a trial by jury on all issues so triable.

3

4    Dated: March 4, 2014                      Respectfully submitted,

5
                                              HARVEY SISKIND LLP
6                                             IAN K. BOYD
                                              DONALD A. THOMPSON
7                                             JANE A. LEVICH

8
9                                             By:   /s/ Ian K. Boyd

10                                            Attorneys for Plaintiff
                                              TREASURE ISLAND MEDIA, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28